NO. 07-07-0492-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 8, 2009
_____

BURNWOOD, INC.,

Appellant

v.

RUSTY CAGLE d/b/a RED BOTTOMS a/k/a FLATLANDER'S,

Appellee
_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-533,942; HON. RUBEN G. REYES, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Burnwood, Inc. (Burnwood) appeals from a judgment entered in favor of Rusty Cagle d/b/a Red Bottoms a/k/a Flatlander's (Cagle). Cagle sued it and Ravan Watson and sought damages for breach of a lease agreement and tortious interference with a business relationship. Burnwood challenges the judgment by contending that the evidence is either or both legally and factually insufficient to support the jury's finding that 1) it breached the lease because the evidence established that Cagle failed to purchase liability insurance

as required by the lease, 2) Cagle did not breach the lease agreement for the same reason, 3) Burnwood tortiously interfered with Cagle's business relationship because Burnwood acted in accordance with the lease and Cagle had no right to enter into the agreement in question, and 4) Burnwood tortiously interfered with Cagle's business relationship because Cagle himself breached the lease and had no right to enter into the agreement in question. We affirm the judgment of the trial court.

*Background*

On February 2, 2001, Cagle (the lessee) entered into a lease agreement with Burnwood (the lessor) to operate a restaurant called Flatlander's. At that time, Burnwood was owned by Charley Ray. The relationship was uneventful until July 2005 when Ray died and ownership of Burnwood passed to Ray's daughter, Ravan Watson.

In December 2005, Cagle began negotiations with Shane Byrd to create a partnership to operate another restaurant named Mesquites at the same location.[1] Flatlander's had been closed for cleaning and/or renovations. In January of 2006, Cagle notified Watson that he was renewing the lease and told her of his negotiations with Byrd. Watson was displeased and decided to end the lease. She sent Cagle a notice of termination on January 6, 2006, a notice of default five days later, locked Cagle from the premises shortly thereafter, and leased the property to Byrd so he could open a restaurant named Mesquites.

Cagle then sued Burnwood and Watson for breach of contract, tortious interference with a business relationship, and conversion among other things. Burnwood

---

[1]"Mesquites" was a name that had been used in the past by Ray and apparently belonged to Burnwood.

2

counterclaimed, asserting similar causes of action. At trial, the jury determined that Burnwood failed to comply with the lease and intentionally interfered with Cagle's partnership agreement with Byrd. While the jury awarded no damages for the breach, it awarded $38,000 as damages for the tortious interference. The trial court entered judgment upon the verdict.

*Issues 1, 2, 3 and 4 - Breach of Contract*

In its first four issues, Burnwood challenges the legal and factual sufficiency of the evidence to support the jury's findings that it breached the lease agreement while Cagle did not. We overrule the issues for the following reasons.

First, allegations regarding the legal and factual insufficiency of the evidence supporting a jury's verdict must be preserved. This can be done through a motion for new trial, if the complaint is one of factual insufficiency, TEX. R. CIV. P. 324(b), or, if one of legal sufficiency, through motions for an instructed verdict, a judgment n.o.v., a new trial, or to disregard a jury's answer to a question, and an objection to the submission of a jury issue. *Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 477 (Tex. 1988). Yet, irrespective of the instrument through which they are raised, the verbiage used must be specific enough to afford the trial court opportunity to correct it. *See* TEX. R. APP. P. 33.1(a)(1) (stating that to preserve error the complaint must be made to the trial court via a request, objection or motion that states "the grounds" for the ruling sought by the complainant); TEX. R. CIV. P. 321 (stating that each point in a motion for new trial must refer to the complaint "in such a way that the objection can be clearly identified and understood by the court"); TEX. R. CIV. P. 322 (prohibiting the consideration of grounds for objection

3

"couched in general terms" in a motion for new trial); *Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.*, 927 S.W.2d 146, 150-51 (Tex. App.–Corpus Christi 1996, no writ); *accord, Arkoma Basin Exploration Co., Inc. v. FMF Associates 1990-A, Ltd.,* 249 S.W.3d 380, 387 (Tex. 2008) (stating that the "cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it"). Although Burnwood filed such a motion for new trial, only one of the multiple grounds raised here was mentioned in it. The ground pertained to the finding that Cagle did not breach the lease. By withholding mention of the other grounds we conclude that Burnwood failed to abide by the "cardinal rule" mentioned in *Arkoma* and, therefore, waived them.[2]

Next, in reviewing the sufficiency of the evidence as to an issue upon which an appellant has the burden of proof, we examine the record for evidence that supports the jury's actual finding while ignoring all contrary evidence. *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001); *Moser v. Davis,* 79 S.W.3d 162, 166 (Tex. App.–Amarillo 2002, no pet.). If no such evidence exists, we then determine whether the contrary proposition was established as a matter of law. *Dow Chemical Co. v. Francis,* 46 S.W.3d at 241. In turn, allegations of factual insufficiency require us to consider all of the evidence; however, we cannot nullify the verdict unless it was so weak or so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* at 242.

---

[2]Indeed, specifying limited grounds could have mislead the trial court to believe that there were no other complaints about the verdict and judgment. Yet, even if all grounds were preserved, we would have overruled them for our review of the record disclosed that they were supported by some evidence and not clearly wrong or unjust.

According to Burnwood, the jury should have found that Cagle breached that portion of the lease requiring him to have liability insurance on the property. This is so because the evidence was purportedly undisputed that he did not maintain such insurance. Yet, perusal of the record shows otherwise. While Cagle stated, at one time, that he had no such insurance, he also stated that he actually did. So too did he attempt to explain why he initially indicated he had none. Other evidence illustrated that Burnwood uttered no objection to the type of insurance he kept nor asserted that he was in breach until Watson came to own Burnwood.

Additionally, Greg Thornton, a friend of Ray's who sometimes assisted Ray with his business, also testified not only that Cagle always maintained insurance but also that they had no problem about it. Thornton also stated that Ray did not maintain insurance on the building as required by the lease and that Ray had difficulty obtaining insurance because of the condition of the roof. *See Case Corp. v. Hi-Class Business Systems of America, Inc.,* 184 S.W.3d 760, 770 (Tex. App.–Dallas 2005, pet. denied) (holding that one party to a contract cannot interfere with another party's ability to perform).

The foregoing constitutes some evidence supporting the determination that Cagle did not breach the lease by failing to maintain insurance. And while that evidence was contradicted by other evidence, the situation merely created a credibility dispute for the jury to resolve as fact finder. Given the manner in which it did, we cannot say that weak evidence supported the decision or that the latter was so against the great weight of the entire evidence as to be clearly wrong.

*Issues 5, 6, 7, and 8 - Tortious Interference with Contract*

In its next four issues, Burnwood argues that the evidence is legally and factually insufficient to support the jury finding that it tortiously interfered with Cagle's agreement with Byrd. We overrule them as well.

Again, Burnwood mentioned only one ground in its motion for new trial. That ground consisted of the allegation that Cagle could not prosecute a cause of action sounding in tortious interference because he himself breached the lease. Moreover, the only alleged breach alluded to concerned his purported failure to maintain liability insurance on the premises. Thus, the other grounds now asserted were not preserved, though evidence of record would nonetheless lead us to conclude that they too were meritless.

As for the ground that we can address, its viability depended upon Burnwood successfully attacking that part of the verdict wherein Cagle was found not to have breached the lease. Since Burnwood was unsuccessful in that matter, the current allegation lacks basis.

Accordingly, we overrule all Burnwood's issues and affirm the judgment.


Brian Quinn
Chief Justice

6